UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

DONALD CLARK (#478056)

VERSUS                                                            CIVIL ACTION

MAJ. WORLEY, ET AL                                     NUMBER 10-561-JJB-DLD

## NOTICE

    Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

    In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

    ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on April 11, 2011.

_____
**MAGISTRATE JUDGE DOCIA L. DALBY**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

DONALD CLARK (#478056)

VERSUS                                              CIVIL ACTION

MAJ. WORLEY, ET AL                                  NUMBER 10-561-JJB-DLD

MAGISTRATE JUDGE'S REPORT

Before the court is the defendants' Motion for Partial Summary Judgment. Record document number 18. The motion is opposed.[1]

Pro se plaintiff, an inmate confined at Dixon Correctional Institute, Jackson, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Maj. Michael Worley, Capt. Kendal McCray, Lt. Jeffrey Sloan, Sgt. Donnell Jones, Sgt. Bryan Covington, Lt. Col. Paul Payne and Dr. Anthony Tarver. Plaintiff alleged that he was beaten without provocation, was denied adequate medical treatment and was issued a false disciplinary report in violation of his constitutional rights.

Defendants moved for summary judgment relying on a statement of undisputed facts, the affidavits of Kendal McCray, Jeffrey Sloan, Donnell Jones, Bryan Covington, Donald Paul Payne, Darrell Cain, Boyd McCartney and Dr. Angelo Anthony Tarver, a copy of Department Regulation No. C-02-006, copies of the disciplinary reports, excerpts from

---

[1] Record document numbers 32 and 33.

the plaintiff's master prison record, a copy of the investigation report conducted by Lt. Col. Paul Payne, copies of the plaintiff's medical and mental health records, and the results of Administrative Remedy Procedure (ARP) DCI-2009-869.

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. Supporting affidavits must set forth facts which would be admissible in evidence. Opposing responses must set forth specific facts showing that there is a genuine issue for trial. Rule 56(e).

**A. Official Capacity**

Defendants argued that they are entitled to Eleventh Amendment immunity insofar as the plaintiff sued them in their official capacity.

The distinction between personal and official capacity suits was clarified by the U.S. Supreme Court in *Hafer v. Melo, et al,* 502 U.S. 21, 112 S.Ct. 358 (1991). A suit against a state official in his official capacity is treated as a suit against the state. *Id*., 502 U.S. at 25, 112 S.Ct. at 361, *citing Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105 (1985). Because the real party in interest in an official-capacity suit is the governmental entity and not the named individual, the "entity's 'policy or custom' must have played a part in the violation of federal law." *Graham, supra*, at 166, 105 S.Ct. at 3105.

Personal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken under of color of state law. A showing that the official, acting under color of state law, caused the deprivation of a federal right is enough to establish personal liability in a § 1983 action. *Hafer*, 502 U.S. at 25, 112 S.Ct. at 362.

*Will v. Michigan Department of State Police*, 491 U.S. 58, 109 S.Ct. 2304 (1989), makes it clear that the distinction between official-capacity suits and personal-capacity suits is more than a "mere pleading device." Officers sued in their personal capacity come to court as individuals. A state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the state. *Will*, 491 U.S. at 71, 109 S.Ct. at 2311, n. 10, *quoting Kentucky v. Graham*, 473 U.S. at 167, 105 S.Ct. at 3106, n. 14.

Thus, the plaintiff may recover money damages against the defendants insofar as the defendants were sued in their individual capacities for actions taken by them under color of state law which caused the deprivation of constitutional rights. However, because the plaintiff did not seek prospective injunctive relief, his claim against the defendants in their official capacities is not actionable under § 1983.

### B. Failure to Exhaust Administrative Remedies

Defendants moved for summary judgment on the ground that the plaintiff failed to exhaust available administrative remedies regarding his claims that he was denied adequate medical treatment and the investigation report was falsified.

Section 1997e of Title 42 of the United States Code provides in pertinent part the following:

> (a) Applicability of Administrative Remedies.--No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Under 42 U.S.C. § 1997e(a), a prisoner must exhaust available administrative

remedies before filing a § 1983 suit and is precluded from filing suit while the administrative complaint is pending. *Clifford v. Gibbs*, 298 F.3d 328, 332 (5th Cir. 2002); *Underwood v. Wilson*, 151 F.3d 292, 296 (5th Cir. 1998); *Wendell v. Asher*, 162 F.3d 887, 891 (5th Cir. 1998); *Harris v. Hegmann*, 198 F.3d 153, 157 (5th Cir. 1999). A prisoner must exhaust his administrative remedies by complying with applicable prison grievance procedures before filing a suit related to prison conditions. *Johnson v. Johnson*, 385 F.3d 503, 514 (5th Cir. 2004). Not only must the prisoner exhaust all available remedies but such exhaustion must be proper, including compliance with an agency's deadlines and other critical procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 90, 126 S.Ct. 2378, 2386 (2006). Because § 1997e(a) expressly requires exhaustion, prisoners may not deliberately bypass the administrative process by flouting an agency's procedural rules. *Id*., 126 S.Ct. at 2389-90. The 42 U.S.C. § 1997e(a) exhaustion requirement is mandatory, irrespective of the forms of relief sought and offered through administrative avenues. *Days v. Johnson*, 332 F.3d 863, 866 (5th Cir. 2003).

In his complaint, the plaintiff alleged that following the incident on September 7, 2009, he was transported to the prison infirmary where he was examined by a nurse, x-rays were taken, he was informed that he was fine and he was instructed to seek sick call if he needed additional medical treatment. Plaintiff alleged that in June or July of the following year, a dentist told him that his ribs had been broken. Plaintiff alleged that Dr. Tarver failed to provide him with adequate medical treatment for his broken ribs in September 2009.

Plaintiff also alleged that following the incident, Lt. Col. Payne conducted an investigation during which he took photographs of the plaintiff. Plaintiff alleged that Lt. Col. Payne failed to mention the photographs in his investigative report in an effort to conceal

evidence.

In Part II of the complaint form, the plaintiff acknowledged that there is an administrative grievance procedure at the prison and stated that he presented the facts relating to his complaint in the grievance procedure.² In explaining the steps that he took, the plaintiff stated that he filed a grievance which was addressed in ARP DCI-2009-869.³

The summary judgment evidence showed that in ARP DCI-2009-869, the plaintiff alleged that he was beaten without provocation and was issued a false disciplinary report. Plaintiff did not allege that he was denied adequate medical treatment or that the investigation report was falsified.

The record evidence supports a finding that the plaintiff failed to exhaust available administrative remedies regarding his claims that he was denied adequate medical treatment and the investigation report was falsified.

**C. False Disciplinary Report**

Plaintiff alleged that he was issued false disciplinary reports.

Under § 1983, allegations that the plaintiff was reported or punished for an act he did not commit do not amount to a denial of due process where the state provides a procedurally adequate hearing. *Collins v. King*, 743 F.2d 248 (5th Cir. 1984). Plaintiff's claim regarding the issuance of a false disciplinary report asserts neither a sufficient liberty interest nor a significant due process concern. *Collins v. King*, 743 F.2d 248 (5th Cir.

---

² Record document number 1, p. 3.

³ *Id.*

1984); *see also Orellana v. Kyle*, 65 F.3d 29, 31-32 (5th Cir. 1995).

**D. Excessive Force**

Plaintiff alleged that on September 7, 2009, he got into a physical confrontation with Msgt. B. McCartney. Plaintiff alleged that other correctional officers were summoned to the tier to assist Msgt. McCartney. Plaintiff alleged that he was knocked to the floor, placed in handcuffs and dragged off the tier. Plaintiff alleged that after the door was closed, he was restrained behind his back and placed in leg shackles. Plaintiff alleged that once he was restrained, Capt. McCray punched him in the face, knocked him to the floor and kicked him in the chest and head. Plaintiff alleged that Lt. Sloan pushed Capt. McCray off of him, stood on his head and kicked him in the sides. Plaintiff alleged that Maj. Worley struck him on his head with a radio three or four times. Plaintiff alleged that after Maj. Worley commented that the plaintiff was not bleeding, Sgt. Jones stood over him and punched him in the face and head and kicked him in his side. Plaintiff alleged that Capt. McCray, Lt. Sloan, Maj. Worley and Sgt. Jones kicked, stomped, punched and beat him at the same time. Plaintiff alleged that after he was placed on a stretcher, Sgt. Jones punched him on his head, neck and jaw. Plaintiff alleged that when he arrived at the infirmary, he was hit in the left eye by Sgt. Covington.

Defendants offered a different version of the incident.[4] Defendants asserted that on the morning of the incident, MSgt. McCartney restrained the plaintiff and his cell mate

---

[4] Affidavits of Michael Worley, Kendal McCray, Jeffrey Sloan, Donnell Jones, Bryan Covington, Darrell Cain and Boyd McCartney, defendants' exhibits 7, 8, 9, 10, 11, 13 and 14, respectively.

behind the back in order to escort them to the shower. Defendants asserted that after the cell door was opened, the plaintiff lunged forward and head-butted MSgt. McCartney in the mouth. Defendants asserted that MSgt. McCartney and Sgt. Jones grabbed the plaintiff, placed him on the floor and Sgt. Jones activated his beeper. Defendants asserted that the plaintiff kicked and resisted while on the floor. Defendants asserted that Lt. Sloan and Sgt. Cain responded to the emergency alert and provided assistance. Defendants asserted that Lt. Sloan gave several orders to the plaintiff to stop resisting before he complied. Defendants asserted that after the plaintiff was placed in ankle restraints, Sgt. Cain and Lt. Sloan assisted the plaintiff to his feet and escorted him off the tier. Defendants asserted that the plaintiff was placed on a gurney and transported to the prison infirmary. Capt. McCray and Maj. Worley assert that they did not arrive on the tier until after the plaintiff was placed on the gurney and deny any involvement in the incident. MSgt. Covington denied hitting the plaintiff in the eye. Defendants asserted that a minimal amount of force was used against the plaintiff and that he was not injured during the incident.

Force is excessive and violative of the Eighth Amendment only if applied maliciously and sadistically for the very purpose of causing harm, rather than a good faith effort to maintain or restore discipline. *Hudson v. McMillian*, 503 U.S. 1, 112 S.Ct. 995 (1992); *Whitley v. Albers*, 475 U.S. 312, 106 S.Ct. 1078 (1986). A necessary element of the excessive force claim is the proof of injury resulting from the use of force. *Knight v. Caldwell*, 970 F.2d 1430, 1432 (5th Cir. 1992), *cert. denied*, 507 U.S. 926, 113 S.Ct. 1298 (1993).

Plaintiff's medical records showed that following the incident the plaintiff was

transported to the prison infirmary where he was examined by medical personnel.[5] Physical examination showed minor abrasions to both elbows, both sides of his flanks, and two minor abrasions on his face and on the back of his head.[6] No cuts, swelling or bruising was noted.[7] The abrasions were shallow with no significant breaks to the skin and no active bleeding was noted.[8] The abrasions were cleaned with soap and water and required no bandaging or further treatment.[9] Following the initial medical assessment, the plaintiff complained of pain to his back, left rib, and right and left shoulder.[10] No swelling or redness to the areas was noted.[11] Plaintiff was administered Motrin®.[12]

On September 22, the plaintiff requested medical treatment for complaints that his left leg was swollen, his right rib hurt and he needed a refill of a medication.[13] No deformity was noted.[14] On September 24, x-rays were taken of the plaintiff's right ribs.[15] No rib

---

[5] Record document number 23, p. 5.

[6] *Id*. at 4.

[7] *Id*. at 5.

[8] *Id*.

[9] *Id*.

[10] *Id*.

[11] *Id*.

[12] *Id*.

[13] *Id*. at 12.

[14] *Id*.

[15] Record document number 26-2, p. 3.

fracture was noted.[16]

On September 30, the plaintiff requested medical treatment for complaints of indigestion and requested a refill of medication.[17] During medical assessment, the plaintiff complained of pain to his left and right rib cage area.[18] No swelling, redness or deformity was noted.[19] Plaintiff was administered Tylenol®.[20]

Plaintiff's allegations of a fractured rib directly contradicts the defendants' summary judgment affidavits stating that the plaintiff sustained only minor abrasions to his elbows and flank. Even if the medical records show that the plaintiff could prove only that he suffered abrasions, this is not per se de minimis injury. There are also factual issues in dispute regarding the remaining *Hudson* factors, i.e., need for the application of force, relationship between the need and use of force, threat perceived by the official, and efforts made to temper the severity of the response. *See Hudson*, 503 U.S. at 6-7, 112 S.Ct. at 998-999.

## RECOMMENDATION

It is the recommendation of the magistrate judge that the Motion for Partial Summary Judgment be granted in part, dismissing the plaintiff's medical indifference, falsified investigation report, false disciplinary report and official capacity claims; and in all other

---

[16] *Id*.

[17] Record document number 23, p. 16.

[18] *Id*.

[19] *Id*.

[20] *Id*.

respects, the defendants' Motion for Partial Summary Judgment be denied and this matter be referred back to the magistrate judge for further proceedings on the plaintiff's excessive force claim.

Signed in Baton Rouge, Louisiana, on April 11, 2011.

**MAGISTRATE JUDGE DOCIA L. DALBY**